IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FARMLAND MUTUAL INSURANCE COMPANY, )
Plaintiff, )
v. ) Case No. 07-2004-JWL
AGCO CORPORATION, )
Defendant. )

**MEMORANDUM AND ORDER**

In this product liability action based on diversity, plaintiff Farmland Mutual Insurance Company ("Farmland"), through subrogation, asserts causes of action held by its insured against defendant AGCO Corporation ("AGCO") arising out of a fire that destroyed equipment leased by AGCO to the insured. The matter presently comes before the Court on AGCO's motion to exclude testimony by Farmland's expert, James Martin (Doc. # 29); AGCO's motion for summary judgment (Doc. # 31); and Farmland's motion for partial summary judgment (Doc. # 27). For the reasons set forth below, all three motions are denied.

## I. **Background**

On April 19, 2006, a fire occurred in Galva, Kansas, at the place of business of Quality Feed & Fertilizer, Inc. ("Quality Feed"). The fire damaged three pieces of equipment—two Terra Gator fertilizer spreaders and one Rogator—that had been parked side-by-side at Quality Feed. Quality Feed had leased all three pieces of equipment from AGCO. Farmland, as Quality Feed's insurer, paid $494,566.30 to Quality Feed for the damage to the equipment from the fire. Farmland now seeks to recover that amount (plus Quality Feed's $5,000 deductible) from AGCO as subrogee of Quality Feed's claims against AGCO. Specifically, Farmland asserts a claim against AGCO for breach of express warranty to recover damages relating to the Terra Gator parked on the west side of the row of damaged equipment ("the west Terra Gator"), in which Farmland alleges the fire originated; and a claim in strict liability for damages relating to the other two pieces of equipment damaged in the fire.

## II. **AGCO's Motion to Exclude Expert Testimony (Doc. # 29)**

### *A. Expert Opinions of James Martin*

AGCO seeks to exclude at trial the expert opinion testimony of James Martin, an electrical engineer designated by Farmland as an expert witness. Mr. Martin's expert opinions may be summarized as follows.

Mr. Martin first relied on the expert opinions of Alex Koenan, a fire investigator retained by Farmland. Mr. Koenan interviewed a witness who stated that he first saw

fire only on the west Terra Gator. Mr. Koenan also spoke with someone from the Kansas State Fire Marshal's Office, who (1) had determined that the fire started on the west Terra Gator and spread to the other Terra Gator, (2) had eliminated arson as a cause, and (3) had concluded that the cause was most likely accidental and associated with the electrical system of the west Terra Gator. Based on these interviews and an inspection of the equipment, Mr. Koenan concluded that the fire did originate on the west Terra Gator. Mr. Koenan further concluded that the cause of the fire was electrical, based on damage he found to the electrical wiring in a rear compartment behind the cab of the west Terra Gator, the lack of any lightning at the time the fire started, the fact that the Terra Gator was not running at that time, and the lack of any evidence of an incendiary fire.

Mr. Martin also relied on his own inspection of the damaged equipment. He found that in the compartment behind the cab of the west Terra Gator, a mechanical cable had segmented and a portion of the cable had become welded to a battery cable. Mr. Martin concluded that the fire originated at this weld, which indicated that electrical current had been present in the battery cable and that electrical arcing had occurred there. He found no other evidence of arcing among the electrical cables in this compartment. Mr. Martin opined that an already-existing fire, without electrical arcing, would not have caused the segmenting and weld that he observed. He further opined that a fire originating elsewhere would attacked the electrical system and drained the battery of power, thereby eliminating the possibility of the arcing and weld that occurred.

Mr. Martin also noted that the positioning and routing of the mechanical and battery cables in the west Terra Gator were different from what he observed in the other Terra Gator and an exemplar Terra Gator. Mr. Martin opined that this positioning allowed the two cables to come into constant contact during operation of the west Terra Gator, and that the vibration and rubbing of the cables together allowed the insulation of the cables to abrade to the point that arcing could occur between them. Mr. Martin also found no evidence that the installation of a radio in the cab—the only modification made to the Terra Gator by Quality Feed—was improper or caused the fire. Accordingly, Mr. Martin concluded that the fire was caused by a defect in the positioning of the cables in the west Terra Gator that allowed their contact and the eventual abrasion of the cables' insulation, and which eventually led to electrical arcing between the cables.

### *B.* *Governing Standards*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert scientific testimony. *See id.* at 589-93; *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999). The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training,

> or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In order to determine that an expert's opinions are admissible, this Court must undertake a two-part analysis: first, the Court must determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the Court must determine "whether the witness' opinions are 'reliable' under the principles set forth" in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The rejection of expert testimony is the exception rather than the rule. *See* Fed. R. Evid. 702 advisory committee notes.

To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field as to make it appear that his or her opinion would rest on a substantial foundation and would tend to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). In determining whether the proffered testimony is reliable, the Court assesses whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be properly applied to the facts in issue. *See Daubert*, 509 U.S. at 592-93. The *Daubert* Court listed four factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error

associated with the theory; and (4) whether the theory has attained widespread or general acceptance. *Id*. at 592-94. In *Kumho Tire*, however, the Supreme Court emphasized that these four factors are not a "definitive checklist or test" and that a court's inquiry into reliability must be "tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150. In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience," rather than the *Daubert* factors and scientific foundations. *Id.* (quoted in *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2004)). The district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id*. at 152.

*C.* *Analysis*

AGCO argues that Mr. Martin's opinions are not sufficiently reliable under the standards set forth in *Daubert* and *Kumho Tire*. Specifically, AGCO argues that the opinions are not reliable for two reasons: Mr. Martin's failure to test or otherwise investigate whether the battery in the west Terra Gator was actually charged, as would have been required for the electrical arcing to have occurred; and Mr. Martin's failure to test the strength of the insulation protecting the two cables or otherwise investigate to determine whether the insulation in fact could have abraded in the manner suggested. Accordingly, AGCO argues that the *Daubert* factors weigh against the admission of Mr. Martin's opinions.

With respect to the first point, AGCO notes Mr. Martin's testimony that the battery must have carried a charge for the fire to have originated as posited. In light of

that requirement, AGCO argues that Mr. Martin's opinion is not reliable because he failed to conduct any particular test or investigation specifically to determine whether the battery was in fact charged at the time of the fire. AGCO suggests that such investigation was necessary in view of the fact that the Terra Gator's regular operator had not operated that equipment for three weeks (although someone else may have) and that such inactivity could have drained the battery of power.

The Court does not find that the lack of a separate investigation of the nature suggested by AGCO renders Mr. Martin's testimony sufficiently unreliable as to compel its exclusion. Mr. Martin testified that the evidence of the segmenting and weld, discovered during his investigation and inspection of the west Terra Gator, indicates in his experience that electrical arcing had occurred and that the battery must therefore have been charged. Mr. Martin also indicated that he would not have been able to test the battery to determine whether it had been charged because of the damage done to it during the fire. Finally, the Court notes that AGCO's own expert seemingly concedes in his report that the battery was charged at the time of the fire.

With respect to this issue, Mr. Martin's opinion did not involve application of a controversial scientific process, such that the *Daubert* factors might be more useful in determining reliability. Mr. Martin based his opinion on his experience and expertise as an electrical engineer, his investigation and inspection of the equipment, the available data from that day, the design of the system, and the opinions of other experts. This "method" by which Mr. Martin formed this opinion is sufficiently reliable for purposes

of Rule 702. *See Bitler*, 400 F.3d at 1235 (quoting *Kumho Tire*, 526 U.S. at 150); *Ash Grove Cement Co. v. Employers Ins. of Wausau*, 246 F.R.D. 656, 664 (D. Kan. 2007).

Second, AGCO argues that Mr. Martin's expert testimony is unreliable because of his failure to test the strength of the cables' insulation to confirm his opinion that the insulation abraded because of contact during operation. AGCO cites its own evidence that destruction of the insulation in that manner would be unlikely.

The Court also rejects this challenge based solely on a lack of testing. Mr. Martin explained that the presence of so many unknown variables precluded an effective replication of all conditions and activity involving the Terra Gator before and during the fire, such that the abrasion over time could be observed and tested. Mr. Martin based his opinions on his experience and expertise, as well as on his investigation, which eliminated other plausible causes for the fire. Again, Mr. Martin's method does not involve application of any controversial scientific process or theory, and the *Daubert* factors are of less utility. Mr. Martin's method is sufficiently reliable under Rule 702, and AGCO's objections go more to the weight of Mr. Martin's opinions that to their admissibility. *See Bitler*, 400 F.3d at 1235 (quoting *Kumho Tire*, 526 U.S. at 150); *Ash Grove*, 246 F.R.D. at 664-65. Accordingly, the Court denies AGCO's motion to exclude Mr. Martin's expert testimony at trial.

## III. **AGCO's Motion for Summary Judgment (Doc. # 31)**

Defendant AGCO seeks summary judgment on Farmland's claims on the basis

that, if Mr. Martin's testimony is excluded, Farmland cannot establish that a defect caused the fire. Because the Court denies AGCO's motion to exclude Mr. Martin's testimony, summary judgment is not appropriate on this basis, and AGCO's motion is denied.

AGCO also seeks partial summary judgment on any tort claim (based on negligence, strict liability, or res ipsa loquitor) for damages to the west Terra Gator; any claim for breach of implied warranty; any claim for breach of express warranty or breach of contract for damages to the other two pieces of equipment; and any claim based on res ipsa loquitor. Farmland has already abandoned any such causes of action in the pretrial order, which supersedes the pleadings and governs Farmland's claims. Farmland now asserts only a claim for breach of express warranty for damages relating to the west Terra Gator and a claim in strict liability for damages relating to the other two pieces of equipment. Accordingly, this portion of AGCO's motion is denied as moot.

## IV. Farmland's Motion for Partial Summary Judgment (Doc. # 27)

Plaintiff Farmland seeks summary judgment on the issue of liability with respect to damages relating to all three pieces of equipment. Farmland further asserts that, if summary judgment is awarded on liability, it is entitled to summary judgment on the issue of the amount of damages relating to two of the pieces of equipment. With respect to liability, Farmland relies on its evidence that a defect existed that caused the fire, other possible causes may be eliminated, and the defect existed at the time Quality Feed received the equipment from AGCO.

The Court does not agree, however, that such evidence entitles Farmland to summary judgment on the issue of liability. AGCO has provided evidence, primarily in the form of expert opinions, that directly refutes Farmland's theory of causation and liability. For instance, AGCO points to its evidence that the weld cited by Mr. Martin as the origination point for the fire may actually have resulted from exposure to molten aluminum after the fire had already begun. AGCO's expert further opined that the fire likely did not occur as posited by Mr. Martin in light of the insulation on the two cables and the fact that the west Terra Gator may not have been operated for some time. Such evidence is sufficient to create an issue of material fact for trial, and Farmland's motion is therefore denied. *See* Fed. R. Civ. P. 56(c) (summary judgment is appropriate only if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law").

IT IS THEREFORE ORDERED BY THE COURT THAT Defendant's Motion

to Exclude Expert Testimony (Doc. # 29) is **denied**.

IT IS FURTHER ORDERED THAT Defendant's Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment (Doc. # 31) is **denied**.

IT IS FURTHER ORDERED THAT Plaintiff's Motion for Partial Summary Judgment (Doc. # 27) is **denied**.

IT IS SO ORDERED.

Dated this 29th day of January, 2008, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge